# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

DANIELLE and OBED ROMERO,
Wife and husband,

       Plaintiffs,

v.                                        Case No. 2:16-cv-01005 WJ-GBW

KRISTIN R. CASTILLO, M.D., and LAS
CRUCES PHYSICIAN SERVICES, L.L.C., a
New Mexico Corporation, and JOHN/JANE DOE,
Representative of Bayer Healthcare Pharmaceuticals Inc.,
and BAYER HEALTHCARE PHARMACEUTICALS INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendant Bayer's Motion to Dismiss filed September 15, 2016 (**Doc. 3**) and Plaintiffs' Motion to Remand filed October 5, 2016 (**Doc. 22**). Having reviewed these pleadings, Defendant's Response in opposition to remand (**Doc. 27**), Plaintiff's Reply (**Doc. 29**) and the applicable law, the Court finds that Plaintiffs' motion is well taken; therefore, the Motion to Remand is **GRANTED**, and this action is **REMANDED** to state court, and the Motion to Dismiss is **DENIED AS MOOT**.

## BACKGROUND

Plaintiffs Danielle and Obed Romero originally filed this suit in the Third Judicial District Court, Dona Ana County, New Mexico on July 28, 2016. They amended the Complaint on August 23, 2016. The First Amended Complaint ("FAC") alleges Plaintiffs suffered various injuries as a result of Ms. Romero's experiences using Essure, an FDA-approved Class III medical device that serves as a form of permanent female birth control. The FAC alleges three state law claims. Count I alleges violations of the New Mexico Unfair Practices Act by

Defendants Kristin R. Castillo, M.D. ("Dr. Castillo"); Las Cruces Physician Services, L.L.C ("LCPS"); and where indicated, by Defendants John/Jane Doe, Representative of Bayer Healthcare Pharmaceuticals Inc., and Bayer Healthcare Pharmaceuticals Inc. ("Bayer"). Count II alleges Medical Malpractice against Castillo and LCPS. Lastly, Count III raises Negligence and Negligent Misrepresentation against all Defendants.

Plaintiffs allege Dr. Castillo and LCPS sold Ms. Romero Essure, then incorrectly implanted, and, knowingly concealed the fact Dr. Castillo had improperly placed the failed Essure device in Ms. Romero. Ms. Romero had treated with Dr. Castillo and other LCPS providers during her fourth pregnancy in 2012. Ms. Romero wished to have tubal ligation following her pregnancy. Dr. Castillo advised Ms. Romero that an Essure device would be an alternative birth control option to tubal ligation.

On March 4, 2013, Dr. Castillo placed an Essure device in Ms. Romero's fallopian tubes. Ms. Romero returned to Dr. Castillo on June 13, 2013, complaining of pain. On July 29, 2013, she returned to LCPS for a hysterosalpingogram ("HSG") test to confirm that her fallopian tubes were fully occluded by Essure. On August 22, 2013, the radiologist reported to Ms. Romero that the Essure device inserted in the right fallopian tube did not appear to be in the correct position. Plaintiffs allege Dr. Castillo stated the radiologist's report was misleading, that she and the Bayer representative had carefully reviewed the X-ray, and that they believed Essure was normal and properly placed.

Ms. Romero returned to Dr. Castillo on September 5, 2013, reporting a positive home pregnancy test. Plaintiff became pregnant in November 2014, and delivered her fifth child on July 6, 2015. In September 2015, physicians performed a hysterectomy. Plaintiffs claim that

hiding the incorrect placement and failure of Essure caused disastrous injury to Ms. Romero. Plaintiffs further contend Bayer's representative cooperated in the alleged cover up.

On September 8, 2016, Bayer timely filed a Notice of Removal to this Court, asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441 (**Doc. 1**).  As grounds for removal, Bayer states Plaintiffs cannot succeed on their state law claims against Bayer unless they show Bayer violated a federal requirement because Essure is exclusively regulated by the U.S. Food and Drug Administration ("FDA").  Bayer filed a Motion to Dismiss on September 15, 2016 (**Doc. 3**).  Plaintiffs filed a Response on September 29, 2016 (**Doc. 15**), and Bayer filed a Reply on October 17, 2016 (**Doc. 24**).

Plaintiffs now move this Court to remand the entire suit to the Third Judicial District Court of New Mexico, arguing the case does not present a federal question (**Doc. 22**).  Defendant filed a Response on October 24, 2016 (**Doc. 27**).  Plaintiffs filed a Reply on November 9, 2016 (**Doc. 29**).

## LEGAL STANDARD

A district court must remand a case to state court whenever the district court lacks subject matter jurisdiction over the case.  28 U.S.C. § 1447(c) (2000).  Absent diversity of citizenship, a district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Generally, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction.  Federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 113 (1936).

"A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks omitted).  "The presence of a federal issue in a case is not sufficient to confer federal question jurisdiction; rather, the federal issue must be one that is actually disputed and substantial." *Id.* at 1235–36 (internal quotation marks omitted). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

"The well-pleaded complaint rule also means that federal-question jurisdiction may not be predicated on a defense that raises federal issues." *Nicodemus*, 440 F.3d at 1232.  "[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.  If a defendant could do so, the plaintiff would be master of nothing." *Caterpillar*, 482 U.S. at 399 (emphasis in original).

The presumption is against removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).   The removing party has the burden to demonstrate the appropriateness of removal. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  "All doubts are to be resolved against removal." *Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

**DISCUSSION**

The Court concludes it has no subject matter jurisdiction over this case.  One the face of Plaintiffs' FAC, there are no federal questions, and no allegations of a federal claim or federal jurisdiction.  The Court grants the Motion to Remand and accordingly denies the Motion to Dismiss as moot.

**I.      There Is No Federal Question Jurisdiction Under The Well-Pleaded Complaint Rule.**

Bayer has not carried its burden of demonstrating the appropriateness of removal, specifically in showing that a federal question is presented on the face of Plaintiffs' well-pled complaint.  The FAC does not make clear that resolution of Plaintiffs' claims depends upon interpretation of federal regulatory requirements, nor does it appear that Plaintiffs have omitted a federal question essential to the resolution of their claims.

A.  <u>There Are No Federal Issues Necessarily Raised Or Actually Disputed.</u>

Plaintiffs argue there is no federal cause of action or federal right pled in the FAC, so this action should be remanded to state court for further proceedings.  Plaintiffs note removal is improper unless a federal question appears on the face of Plaintiffs' well-pleaded complaint.  Plaintiffs' primary argument is that neither the Essure device, nor its manufacture or labeling, is at issue here.  Plaintiffs do not challenge the device at all so as to implicate federal preemption, rather they challenge the specific negligent conduct of Bayer's unidentified corporate agent, months after Essure was inserted in Ms. Romero.  Plaintiffs limit their allegations against Bayer and its representative to negligent conduct that occurred during the reading of the HSG.  Plaintiffs state they do not need to discuss FDA disclosures or FDA-approved pamphlets to allege that a Bayer representative misread the HSG or concealed facts about what appeared on the HSG when interpreting the HSG with Dr. Castillo.  Plaintiffs insist the FAC is not about

Bayer's omissions in labeling or training materials, nor is it about the overall safety or effectiveness of Essure.

Bayer responds that Plaintiffs' state-law claims arise under federal law because Essure is a Class III, FDA pre-market approved ("PMA") device under the Medical Device Amendments of 1976 ("MDA") to the Federal Food, Drug, and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. § 360k(a)[1], the case belongs under federal jurisdiction.   Bayer asserts Plaintiffs claims turn on disputed, substantial federal issues given the federal oversight at issue with PMA medical devices.   Specifically, Bayer maintains a federal question is apparent because, as a critical step in proving Plaintiffs' negligence and unfair practices claims, they must prove the Defendants made allegations that differed from federal labeling requirements, and such claims are preempted by federal law.   Bayer argues Essure's FDA-approved labeling includes disclosures regarding the HSG after placement and information regarding whether Essure is properly placed.   Bayer insists that to state non-preempted claims against Bayer, Plaintiffs must ultimately prove the Bayer representative's statements were inconsistent with these FDA labeling requirements, even if Plaintiffs do not address such matters in their complaint.

To support its proposition, Bayer cites *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321–25 (2008), where the Supreme Court held FDA pre-market approval of a Class III medical device establishes federal requirements applicable to that device, and state-law tort claims impose state-law requirements. Thus, state-law claims that rest on duties that are "different from, or in addition to" federal requirements are expressly preempted. *Id.* at 330.   Bayer basically argues that all of Plaintiffs' state law claims are preempted because the claims seek to impose duties different from or in addition to FDA requirements.

---

[1] Section 360k(a) of the MDA preempts any state requirement "which is different from, or in addition to, any requirement" imposed by the MDA. *See* 21 U.S.C. § 360k(a)(1).

In the Reply, Plaintiffs stress they do not seek to impose any disclosures different from or in addition to an FDA-approved Essure pamphlet that addresses the reading of the HSG.  In fact, Plaintiffs assert the pamphlet is irrelevant to their claims.  Plaintiffs allege the HSG *was* properly performed by the radiologist, and their negligence claim against Bayer arises from Bayer's agent who negligently "over-read" the HSG and acted like a physician when he or she contradicted the radiologist.  Put simply, Bayer's agent assumed a duty to read the HSG, and did it poorly.

At the outset, the Court notes that on its face the FAC alleges state-law causes of action for unfair trade practices, negligence and negligent misrepresentation, and medical malpractice. More specifically, Plaintiffs allege they are entitled to relief because Defendants improperly implanted Essure, misread Ms. Romero's HSG, and participated in a cover-up regarding the HSG results.  Plaintiffs also allege the Bayer representative negligently injected himself or herself into the physician-patient relationship between Dr. Castillo and Ms. Romero.  These claims are grounded in basic New Mexico tort law, and violations of a New Mexico statute.  To prevail, Plaintiffs must show the common law elements of negligence and the statutory elements for unfair practices have been met without the need to reference any federal law.  Very little here would require the Court to answer any federal question.

The "substantial question" branch of federal question jurisdiction is exceedingly narrow—a "special and small category" of cases.  *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).  The Supreme Court has "stressed that the 'mere need to apply federal law in a state-law claim' will not 'suffice to open the arising under door.'" *Id.* (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)).  "Instead, 'federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal

interest in claiming the advantages thought to be inherent in a federal forum.'" *Id.* (quoting *Grable*, 545 U.S. at 313.

A federal issue here may lurk in the background, but it is not actually disputed. Any federal issues are relevant only to whether Plaintiffs' claims are preempted, and are not part of their well-pleaded complaint. *See* § II, *infra*. Bayer ignores much of what the FAC actually states. Nowhere does the FAC assert that Defendants made statements or representations that differed from federal labeling requirements. Nowhere do Plaintiffs challenge the Essure device itself or any aspects of its marketing, manufacture, labeling, or sale. The FAC does not implicate any serious federal interests that are best suited in federal court. Rather, the allegations pertain to the encounter between Dr. Castillo and Bayer's representative to read and interpret the HSG, and negligent conduct that allegedly flowed from this encounter when the Bayer representative misread the HSG properly performed by the radiologist. As Plaintiffs correctly note, New Mexico courts are fully capable of deciding the questions of negligence, negligent misrepresentation, medical malpractice, and legislatively-enacted consumer protection law. That this suit may raise the need to reference or even interpret a federal statute is not sufficient to confer federal question jurisdiction over the entire suit. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

Unfortunately for Bayer, this is not a products liability case. Most of the cases Bayer cites involve products liability challenges to Class III PMA medical devices.[2] Such claims, unlike the ones here, facially call into question to safety, effectiveness, manufacture and quality of medical devices. Nowhere in the FAC do Plaintiffs allege products liability or question the

---

[2] *Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 675 (S.D. Ohio 2014), another case Bayer relies upon, is a district court decision from another jurisdiction, like *Jenkins*. *Jenkins* and *Reuter* both involve products liability claims, which are not at issue here and which Plaintiffs chose not to raise. Importantly, in *Reuter* the plaintiffs' complaint contained explicit allegations that the defendants used the medical device in a manner inconsistent with FDA approval. No such allegations exist here. As such, *Jenkins* and *Reuter* are hardly persuasive.

FDA's regulation of Essure.  Bayer likens this case to *Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 876 (W.D. Tenn. 2013), where the complaint alleged a medical device was used in a manner inconsistent with FDA approval.  The complaint also alleged claims for products liability, among others.  *See id.*  The court held the regulations and requirements of the safety and effectiveness of such a device belonged under the scope of federal question jurisdiction.  *See id.* at 878.  The gist of plaintiffs' allegations was that the device was used in an off-label manner, out of the regulatory scope and requirements of the FDA, thus the defendant failed to comply with federal regulatory requirements.  *See id.* at 880.

The glaring problem with Bayer's reliance on *Jenkins* is that here, Plaintiffs do not challenge anything about Essure's sale, design, label or marketing.  Plaintiffs do not necessarily challenge the safety or effectiveness of Essure.  Unlike the *Jenkins* plaintiffs, here Plaintiffs' well-pleaded complaint makes no mention of the FDA or MDA, nor does it contend Defendants used Essure in a manner inconsistent with FDA approval.  Rather, Plaintiffs challenge Dr. Castillo and LCPS and name Bayer because one of its representatives allegedly participated in the negligent conduct by misreading an HSG that *was* allegedly performed properly in the first place.  Plaintiffs do not claim Defendants failed to comply with FDA requirements in selling and using Essure.  This is not a products liability case challenging the Essure device itself, but rather a negligence lawsuit.  Thus, Plaintiffs' claims do not call into question federal law.

Likewise, Bayer's reliance on *Riegel* is misplaced.  There, the Supreme Court held common-law causes of action in *products liability cases* against medical devices FDA Class III PMA devices were preempted by the MDA.  *See* 552 U.S. at 325.  Specifically, any state requirement that relates to safety or effectiveness of a device is preempted when it differs from federal requirements.  *See id.* at 327–28.  As stated above, this is simply not a products liability

suit and the FAC contains no allegations of strict liability, breach of implied warranty, or negligent design, testing, inspection, distribution, labeling, marketing, sale and manufacture. *See id.* Rather, Plaintiffs challenge the allegedly negligent conduct of the Bayer representative acting as a *de facto* healthcare provider to Ms. Romero after Essure was inserted. The instant case is more similar to *Adkins v. Cytyc Corp.*, No. 4:07CV00053, 2008 WL 2680474, at *3 (W.D. Va. July 3, 2008), upon which Plaintiffs rely. In *Adkins*, the court reasoned, "[t]he FDA does not regulate interactions between corporate representatives and physicians on-site at a particular surgery … These localized situations are traditional matters for the common law, not the FDA's regulatory approval process. Such a claim does not challenge the design, manufacture, and labeling of the [medical] device so as to implicate *Riegel* preemption, but rather challenges negligence by a corporate agent acting as a *de facto* physician's assistant during a surgical procedure." *Id.* (alterations added). Similarly here, the well-pled FAC does not facially challenge Essure itself, and makes no mention of any federal law. The Court agrees with Plaintiffs that their state-law *respondeat superior* claims against Bayer for its representative's rendering of bad medical advice do not necessarily raise disputed federal issues.

B.   The Federal Issue Is Not Substantial.

Plaintiffs next contend their claims do not raise substantial federal questions because they do not call into question the federal system as a whole, rather they involve only a single Bayer representative's improper interjection of him or herself into a single patient's treatment decisions. Plaintiffs rely on *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 312 (E.D. Va. 2015), where a plaintiff suffered injuries during surgery and sued the medical device manufacturer in state court for malpractice and products liability. The manufacturer removed the suit to federal court, and the district judge granted plaintiff's motion to remand. *See id.* The court focused on

the substantiality factor, and found that any federal issues, although important to the parties, did not impact the federal system as a whole.  *See id.* at 318.

In response, Bayer argues the disputed federal issues here are substantial because other courts have recognized that claims involving Class III PMA medical devices implicate substantial federal issues, again citing *Jenkins* and *Reuter*.  Bayer insists the federal interest in Essure is great because the FDA has held extensive public hearings to address the safety of Essure.  Bayer criticizes Plaintiffs' reliance on *Carmine* because *Carmine* involved allegations of off-label use of a device.  However, Bayer apparently ignores the fact that in *Jenkins* and *Reuter*, the complaints also contained allegations of off-label device use (while here there are no allegations of off-label Essure use).  *See Jenkins*, 984 F. Supp. 2d. at 876; *Reuter*, 996 F. Supp. 2d. at 675.

Bayer also makes a brief argument in a footnote that Plaintiffs' informed consent claims are preempted because they challenge the accuracy of statements the FDA has already approved. Plaintiffs counter that their informed consent claims are against Dr. Castillo, not Bayer, and do not contest FDA-approved content or seek to add requirements to Essure's FDA-approved materials.  Informed consent claims address the duty of the physician, not the manufacturer, to the patient.  Thus, informed consent claims against a treating provider do not raise substantial issues of federal law.  The Court agrees with Plaintiffs that the FAC raises medical malpractice and informed consent claims against Dr. Castillo, and such claims do not facially challenge any federal law or FDA-approved statements.  The Court will not address the merits of Bayer's preemption arguments, because such arguments concern Bayer's federal defense of preemption and are not implicated by the well-pleaded complaint.  *See See* § II, *infra*.

11

The Court finds the federal issues in the instant case fail to meet the "substantiality" requirement under *Gunn*. It is not enough that Plaintiffs' state-law claims arise under the backdrop of a federal law. *See Merrell Dow*, 478 U.S. at 813. The federal issue here is not significant to the federal system as a whole. The suit instead involves purely state-law claims. In *Gunn*, the Court required the party seeking removal to demonstrate a federal issue is significant to the federal system as a whole. *See* 133 S. Ct. at 1066. The Court in *Gunn* found substantiality was met in *Grable*, because the Court had been "primarily focused not on the interests of the litigants themselves, but rather on the broader significance of the notice question for the Federal Government ..., emphasiz[ing] the Government's 'strong interest' in being able to recover delinquent taxes through seizure and sale of property, which in turn 'require[d] clear terms of notice' " to buyers. *Id.* (quoting *Grable*, 545 U.S. at 310–15). In contrast, the federal issue in *Gunn* was not substantial because "the resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties," but there needed to be "something more" than a showing of a federal element as part of the cause of action. *Id.* at 1068.

Bayer's reliance on *Jenkins* is further misplaced because *Jenkins* did not evaluate, or even address, the concerns the Supreme Court articulated in *Gunn*.[3] In *Gunn*, the Court emphasized the extremely narrow scope of the substantial federal questions doctrine. *See* 133 S. Ct. at 1066– 67. The *Gunn* opinion stressed that the "substantiality" element essentially means that the federal issues must affect more than the parties to the case, and will usually impact the operation of the federal system itself. *See id.* In this case, resolving questions of medical malpractice, negligence, and unfair practices would not be "controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). Similarly here, any federal

_____

[3] For the same reason, Bayer's reliance on *Reuter* is equally misplaced. *Reuter* did not analyze the *Gunn* factors.

issues in dispute are not substantial under *Gunn* because, while they are important to the individual litigants, they are not significant to the federal system as a whole.  Bayer has not shown the government's operations will be affected by the resolution of the state-law claims presented in this litigation.

### C.   The Balance Of Federal-State Powers Is Affected.

Finally, Plaintiffs argue the balance of federal and state powers is affected because Congress did not create federal jurisdiction or preclude state jurisdiction even in suits alleging violations of the MDA.  Further, the Supreme Court in *Merrell Dow* indicated its unwillingness to open up federal courts to all state law tort claims involving medical devices. *See Merrell Dow*, 478 U.S. at 814–17.

Bayer maintains there will be no disruption of the balance of federal and state powers if the Court exercises subject matter jurisdiction because this case involves "unique" federal interests associated with Essure, a Class III PMA medical device.  Bayer argues regulations regarding the safety and effectiveness of Essure belong under federal law because Essure is a Class III PMA device.  Bayer points out that only a small number of medical devices receive PMA classification, thus evidencing the level of federal oversight.

The Court concludes that even if federal issues here were substantial, resolving this dispute in a federal forum would disrupt the federal-state balance.  *See Gunn*, 133 S. Ct. at 1066–67. Congress did not create an exclusively federal cause of action even in cases under the FDCA and did not preempt all state remedies under the MDA, and these are important factors that weigh against federal jurisdiction here.  Moreover, New Mexico has a strong interest in deciding negligence and malpractice suits over New Mexico physicians.

## II.      Defendant's Federal Preemption Defense Does Not Create Federal Question Jurisdiction.

If there is a federal element to this suit, it is found in Defendants' federal preemption defense, not in Plaintiffs' well-pleaded complaint.  That Defendants have filed a Motion to Dismiss based almost exclusively on federal preemption is telling.  *See* Doc. 3.  Even though this defense raises issues of federal law, these issues do not appear on the face of Plaintiffs' FAC.  A federal defense does not give rise to federal question jurisdiction under the well-pleaded complaint rule. *Nicodemus*, 440 F.3d at 1232.

Plaintiffs correctly argue a case may not be removed to federal court on the basis of a federal defense.  Rather, the federal question conferring jurisdiction must appear in the elements of Plaintiffs' cause of action.  *See Fajen*, 683 F.2d at 333 ("[T]he federal controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.").

Bayer spends the vast majority of its Response arguing various reasons why Plaintiffs' claims might ultimately be subject to federal preemption because the claims turn on whether the alleged statements of the Bayer representative are consistent with FDA-approved labeling.  Bayer's reliance on a federal defense is not sufficient to confer federal question jurisdiction. *Merrell Dow*, 478 U.S. at 808.  This would lead to the same result "even if both parties admit that the defense is the only question truly at issue in the case."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 14 (1983).   That Defendants may ultimately rely upon federal preemption does not confer federal question jurisdiction.  "[T]he presence of a federal question … in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause

heard in state court." *Caterpillar*, 482 U.S. at 398–99.  If there is merit to Bayer's federal preemption defense, it is not for this Court to decide.

Bayer has not met its burden of establishing the existence of a federal question on the face of Plaintiffs' well-pleaded complaint and thus, there is no subject matter jurisdiction.  For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand (**Doc. 22**) is **GRANTED** and Bayer's Motion to Dismiss (**Doc. 3**) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Third Judicial District Court, County of Dona Ana, State of New Mexico.  The Clerk of Court is directed to take the necessary actions to effectuate this remand.

_____

UNITED STATES DISTRICT JUDGE